UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/14/2026

THE AMERICAN SOCIETY FOR THE
PREVENTION OF CRUELTY TO ANIMALS,

                Plaintiff,

      -against-                                25-cv-5016 (CM) (BCM)

GORDON LAVALETTE,

                Defendant.

———————————————————————X

## DECISION AND ORDER GRANTING
## PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM

McMahon, J.:

Before the Court is a motion to dismiss a frivolous counterclaim that fails as a matter of law. The motion is GRANTED.

Plaintiff The American Society for the Prevention of Cruelty to Animals ("ASPCA") initiated this action against Defendant Gordon Lavalette ("Lavalette"), its former Senior Vice President and Chief Financial Officer, for breaches of his fiduciary obligations and duty of loyalty. In response to the ASPCA's Complaint, Lavalette asserted a counterclaim for breach of the confidentiality provisions contained in the parties' Agreement in Contemplation of Mediation and Mediation Agreement. Lavalette alleges that the ASPCA "breached the broad and sweeping confidentiality terms" of those agreements by bringing this lawsuit and including in the Complaint factual allegations about the parties' dispute. His theory seems to be that, because the underlying dispute was discussed during the mediation and what went on during the mediation is confidential, the ASPCA is precluded from bringing a lawsuit now that the mediation has failed, because its

complaint necessarily pleads facts, and its case will inevitably rely on evidence, disclosed to the mediator as part of the failed mediation.

A more frivolous counterclaim cannot be imagined. Counsel for Lavalette are ordered to show cause why they – attorneys licensed to practice in this court – should not be sanctioned for wasting this Court's time and the ASPCA's resources by asserting such a claim.

## BACKGROUND

Unless otherwise noted, the facts are drawn from Lavalette's Amended Answer and Counterclaim and the exhibits attached thereto. *See* Dkt. No. 37. In accordance with the standard for assessing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all non-conclusory allegations and draws all reasonable inferences in Lavalette's favor. *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

Plaintiff and Counterclaim-Defendant The American Society for the Prevention of Cruelty to Animals ("ASPCA") is a New York not-for-profit corporation.

Defendant and Counterclaim-Plaintiff Gordon Lavalette ("Lavalette") was the ASPCA's Senior Vice President and Chief Financial Officer from March 15, 2021 until May 12, 2025.

On January 21, 2025, Lavalette and the ASPCA entered into an Agreement in Contemplation of Confidential Mediation after Lavalette "asserted certain employment-related claims against the ASPCA (the 'Dispute')." *See* Dkt. No. 37, Ex. A. Consistent with the Agreement, the parties agreed "to engage in private, confidential mediation in an attempt to fully and finally resolve the Dispute." Dkt. No. 37 at 32.

Pursuant to the Agreement in Contemplation of Mediation, Lavalette and the ASPCA agreed to "promptly negotiate in good faith to select a mutually-acceptable mediator and mediation date," to be scheduled no later than February 28, 2025. Dkt. No. 37, Ex. A ¶ 2. In order to allow

Lavalette to prepare for mediation, the parties agreed that he would be placed on paid "administrative leave" from his ASPCA employment. *Id.* ¶ 3. In the event the Dispute was not resolved through mediation, the Agreement allowed Lavalette to return to his position as CFO. The parties further agreed to characterize Lavalette's leave as a "medical leave of absence" when communicating with ASPCA employees. *Id.* ¶ 4. The Agreement did not contain any waiver of litigation if the mediation were to prove unsuccessful.

In February 2025, the ASPCA and Lavalette entered into a second agreement, the Mediation Agreement. *See* Dkt. No. 37, Ex. B. Pursuant to the Mediation Agreement, the parties agreed to enter into a confidential mediation process with a mutually selected mediator in an attempt to resolve and settle Lavalette's claims with the ASPCA. *See id.* The Mediation Agreement provided that, "The purpose of the mediation is to attempt to arrive at *a mutually acceptable resolution of all existing controversies or disputes between the Parties* in a cooperative and informal manner," and that, "This is a voluntary, non-binding process." Dkt. No. 37 at 36 (emphasis added). Like the Agreement in Contemplation of Confidential Mediation, the Mediation Agreement did not contain any litigation waiver.

The parties participated in confidential mediation sessions as contemplated by the agreements. They presumably failed to resolve their dispute amicably. Two lawsuits – one filed by each party – followed hard on the failure of the mediation.

On May 15, 2025, Lavalette filed a lawsuit against the ASPCA and two of its executive employees in New Jersey Superior Court, alleging defamation and retaliatory discharge under the New Jersey Conscientious Employee Protection Act and the New York Labor Law. *See Lavalette*

*v. Am. Soc'y for the Prevention of Cruelty to Animals et al.*, ESX-L-003779-25 (N.J. Super. Ct. Law Div., Essex County).[1]

Less than one month later, on June 13, 2025, the ASPCA filed its Complaint in the instant action, alleging that Lavalette breached his fiduciary obligations and duty of loyalty to the company "by mounting a relentless campaign to enrich himself at the expense of the ASPCA and its mission," and asserting faithless servant and breach of fiduciary claims. Dkt. No. 1 ¶ 1. The Complaint alleges that, "after he directed a profanity-laced, screaming tirade at his boss, the ASPCA's Chief Executive Officer," Lavalette "began to use the ASPCA's time and resources to manufacture and file bad-faith, vexatious, and harassing internal complaints for the improper purpose of securing an undeserved and exorbitant separation payment." Complaint ¶¶ 1-2. In the months following his "insubordinate outburst directed at the CEO," Lavalette allegedly filed more than 70 internal complaints about more than 25 subjects. *Id.* After filing this initial round of internal complaints, Lavalette became frustrated that ASPCA did not fire him (which he believed would give him grounds for a lawsuit) or offer him a severance package in order to induce him to resign. Complaint ¶ 3. As a result, Lavalette "embarked on an expedition to manufacture and submit (and resubmit), at an increasingly frenetic pace, bad faith complaints to pressure the ASPCA to separate him from employment on terms that would personally enrich him." *Id.* As one example, after Lavalette's attorney sent a demand letter to the ASPCA seeking payment in exchange for his departure, Lavalette reported to the ASPCA that its newly retained independent financial audit firm required certain information about a vendor contract to "close out" the audit and requested that ASPCA personnel provide him documents concerning the vendor. Complaint ¶ 5. The ASPCA

---

[1] On June 16, 2025, defendants removed the action to the United States District Court for the District of New Jersey. *See Lavalette v. Am. Soc'y for the Prevention of Cruelty to Animals*, Case No. 2:25-cv-11833, Dkt. No. 1. Lavalette moved to remand his case to state court; the court granted that motion on October 9, 2025. *See* Dkt. No. 23.

4

alleges that this representation was false; the audit firm was not seeking the information he claimed – instead, "Lavalette was seeking documents and information to drum up a false concern about the vendor, to hold the firm's audit report hostage in contravention of his fiduciary obligations, and to enhance his bargaining power in discussions regarding his departure from the ASPCA." *Id.* The ASPCA ultimately fired Lavalette for his alleged misconduct, after which Lavalette filed his lawsuit in New Jersey state court. Complaint ¶ 7.

On July 18, 2025, Lavalette filed a motion to stay, dismiss, or transfer the instant case, on grounds that the ASPCA violated the first-to-file rule by filing its Complaint in this District. *See* Dkt. Nos. 9, 10. That motion was denied on November 3, 2025. *See* Dkt. No. 31.

Lavalette filed his Answer to the ASPCA's Complaint on November 17, 2025, denying many of the Complaint's allegations and insisting that any complaints he filed "were made in good faith, without malicious intent, and with the intent to help, not harm, the ASPCA." Dkt. No. 37 ¶ 41. Lavalette also asserted nineteen affirmative defenses and one counterclaim. The counterclaim was predicated on the ASPCA's purported breach of the parties' confidentiality agreements. *See* Dkt. No. 32.

After the ASPCA moved to dismiss Lavalette's counterclaim, *see* Dkt. No. 35, Lavalette filed an Amended Answer and Counterclaim, in which it reasserted the same counterclaim against the ASPCA for its alleged breach of "the broad and sweeping confidentiality terms" of the mediation agreements. Lavalette also alleged that the filing of the complaint violated Federal Rule of Evidence 408. Dkt. No. 37.

In support of his counterclaim, Lavalette alleges that the ASPCA's Complaint includes "false financial allegations and crude mischaracterizations" which are "premised on and derived solely from discussions between the parties hereto that occurred under the broad umbrella of the

aforesaid confidential mediation Agreements." Dkt. No. 37 ¶ 18. Without using information that it is barred from disclosing pursuant to the mediation agreements, Lavalette alleges, the ASPCA "would be unable to prove any animus or malice supporting its claims of 'faithlessness' and breach of fiduciary duty." *Id.* ¶ 20.

The ASPCA once again moved to dismiss Lavalette's counterclaim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) – the motion presently before the Court. *See* Dkt. No. 40.

## LEGAL STANDARD

### I.     Motion to Dismiss Pursuant to Rule 12(b)(6)

"A motion to dismiss a counterclaim for failure to state a claim is evaluated using the same standard as a motion to dismiss a complaint." *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 203 (S.D.N.Y. 2015).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll reasonable inferences should be drawn in favor of the plaintiff," but the "complaint must contain sufficient allegations to nudge a claim 'across the line from conceivable to plausible.'" *Sphere Digital, LLC v. Armstrong*, 2020 WL 6064156, at *4 (S.D.N.Y. Oct. 14, 2020) (quoting *Twombly*, 550 U.S. at 555). Where a plaintiff fails to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Rule 12(b)(6) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the truth of the allegations. *Id.* at 545.

6

## DISCUSSION

Lavalette's Amended Answer and Counterclaim asserts a single claim arising out of two alleged defalcations by the ASPCA: its purported violation of Federal Rule of Evidence 408 and an alleged breach of the confidentiality provisions in the Agreement in Contemplation of Confidential Mediation and the Mediation Agreement.

Rule 408 does not provide an independent cause of action and thus cannot be a basis for a breach of contract counterclaim.

Lavalette's breach of contract counterclaim fails because Lavalette has not plausibly alleged a breach of either agreement. *See Mathis v. Liberty Moving Co.*, 2011 WL 5118445, at *3 (E.D.N.Y. Oct. 26, 2011) ("Claims for breach of confidentiality provisions are treated as any other breach of contract claim.").

## I.    Rule 408

The ASPCA first argues that Lavalette's counterclaim is legally deficient to the extent it seeks to assert a cause of action premised on a purported violation of Rule 408 of the Federal Rules of Evidence, because Rule 408 does not create a private cause of action. The Court agrees.

Federal Rule of Evidence 408 precludes admission of evidence regarding "furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and conduct or a statement made during compromise negotiations about the claim." Fed. R. Evid. 408(a).

Rule 408 is an evidentiary rule, not a source of substantive liability. As such, it does not provide a legal basis for Lavalette's claim of "breach." *See Great Am. All. Ins. Co. v. Greater New York Mut. Ins. Co.*, 2026 WL 276013, at *3 (E.D.N.Y. Feb. 3, 2026). If Lavalette believed that any of the Complaint's allegations violated Rule 408, he could have (and should have) filed

7

a timely motion to strike those portions of the Complaint pursuant to Federal Rule of Civil Procedure 12(f). *See Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 40 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994); *My Mavens, LLC v. Grubhub, Inc.*, 2023 WL 5237519, at *15 (S.D.N.Y. Aug. 14, 2023) (collecting cases). He did not do so. Nor would it have been appropriate for him to do so, since there is absolutely nothing in the Complaint that discloses any settlement offer that was made, either during the mediation or otherwise, by either side. That being so, any motion to strike would have been promptly denied as frivolous.

## II.    Breach of Contract

The Court next considers whether Lavalette has plausibly alleged a breach of the Agreement in Contemplation of Mediation and/or the Mediation Agreement. He has not.

There are four elements to a claim for breach of contract under New York law: "[1] the existence of a contract, [2] the plaintiff's performance thereunder, [3] the defendant's breach thereof, and [4] resulting damages." *Russo v. Estée Lauder Corp.*, 856 F. Supp. 2d 437, 460 (E.D.N.Y. 2012).

Lavalette alleges that "by filing its Complaint in this action, the ASPCA has breached the broad and sweeping confidentiality terms" of the Agreement in Comtemplation of Confidential Mediation and the Mediation Agreement "it entered into with Lavalette and falsely and intentionally mis-portrayed normal, lawful settlement and mediation discussions and proceedings undertaken pursuant to the said Agreements as a financial 'shakedown' scheme as the ASPCA falsely asserts in its Complaint." Dkt. No. 37 at ¶ 12. Specifically, Lavalette contends that the ASPCA breached the agreements' confidentiality provisions by making the following allegations in its Complaint:

- Lavalette "mounted a relentless campaign to enrich himself at the expense of the ASPCA and its mission." Complaint ¶ 1.

8

- "Lavalette began to use the ASPCA's time and resources to manufacture and file bad-faith, vexatious, and harassing internal complaints for the improper purpose of securing an undeserved and exorbitant separation payment." Complaint ¶ 2.

- Lavalette "pressure[d] the ASPCA to separate him from employment [with the ASPCA] on terms that would personally enrich him." Complaint ¶ 3.

- Lavalette conducted a "malicious campaign to inundate the ASPCA with bad-faith internal complaints designed to inflict harm on the ASPCA, stifle its operations, and attempt to have the ASPCA separate with him on terms that would financially enrich him." Complaint ¶ 35.

- "Lavalette's internal complaints became even more unprincipled after his counsel sent the ASPCA a demand letter seeking separation pay in exchange for his resignation, in early January 2025." Complaint ¶ 35.

- "Lavalette sought to interfere with the ASPCA's operations to such a degree that it would succumb to the pressure he was exerting to separate him from employment in exchange for an outsized separation payment." Complaint ¶ 41.

- Lavalette "conducted his faithless scheme[.]" Complaint ¶ 43.

Lavalette argues that these allegations – allegations about the facts that undergird the claims asserted against him – are "false financial allegations and crude mischaracterizations" that "are premised on and derived solely from discussions between the parties hereto that occurred under the broad umbrella of the aforesaid confidential mediation Agreements," and that "None of those claims arise from facts outside that confidential process." Dkt. No. 37 ¶ 18. He argues, as a result, that the claims cannot be maintained without breaching the terms of the two agreements.

The ASPCA responds that the allegations in its Complaint have "absolutely nothing to do with mediation-related communications." Dkt. No. 41 at 19. The ASPCA is correct. There is no mention of the mediation, or of anything that went on during the mediation, in the ASPCA's Complaint. Of course, the ASPCA's allegations pertain to the underlying dispute that was the subject of the mediation – a dispute concerning Lavalette's alleged shakedown of his employer

while employed by the ASPCA, which is the gravamen of its breach of fiduciary duty claim against Defendant.

Accordingly, Lavalette can only state a breach of contract claim if the Agreement in Contemplation of Mediation and/or the Mediation Agreement constitutes a *de facto* waiver of litigation based on facts that were disclosed to the mediator during the mediation process.

A more ridiculous argument cannot be imagined. Neither the Mediation Agreement nor the Agreement in Contemplation of Confidential Mediation contains a provision that prohibits the parties to the mediation from bringing a lawsuit on the disputes that were mediated in the event that mediation failed – as it did. Lavalette knows this; he has brought a lawsuit in New Jersey Superior Court in order to litigate matters that were necessarily raised during the mediation, which was intended to resolve "all disputes" between him and the ASPCA – including the ones that are pleaded in the New Jersey action. I have not been advised that Lavalette has withdrawn that case because he understands it to be a breach of the agreements.

The Agreement in Contemplation of Confidential Mediation provides, in relevant part, that "This Agreement, and the discussion that led to it, are strictly confidential and shall not be disclosed to anyone other than the Parties, the Parties' counsel, and Lavalette's spouse." Dkt. No. 37, Ex. A ¶ 1. This means exactly what it says. The parties are to keep two things confidential: (1) the fact that they agreed to mediate, and (2) the discussions that led up to the signing of that preliminary agreement. *See Phila. Indem. Ins. Co. v. Streb, Inc.*, 487 F. Supp. 3d 174, 184 (S.D.N.Y. 2020); *Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003 (N.Y. 2014). Nothing in this provision renders the facts of the parties' disputes confidential, and nothing in that language operates as a litigation waiver by either side.

Moreover, there is nothing in the ASPCA's Complaint about the Agreement in Contemplation of Confidential Mediation – not its existence, not its terms, and not anything about any discussion that led to its signing. The only person who has made that information public – and who would arguably have breached the Agreement thereby – is Lavalette, not the ASPCA.

And so we turn to the Mediation Agreement itself. It is typical of the sort of confidentiality provision that parties who are mediating enter into, providing as follows:

**2. Confidentiality**

*The entire mediation process is confidential.* The Parties and the Mediator will not disclose any information including offers, negotiations, promises, conduct, statements, or settlement terms, whether oral or written, made or produced by any of the Parties or their representatives (the "Confidential Material"), and will not use any Confidential Material except in connection with this mediation. The Parties shall not disclose, cite to, or seek to admit Confidential Material in any action, arbitration, or proceeding of any kind, except as required by law. If any Party believes that it is required by law to produce or disclose Confidential Material, it shall notify the other Parties through their counsel of record promptly after learning of such alleged requirement. Confidential Material is confidential by the terms of this Mediation Agreement, as well as confidential and privileged to the fullest extent permitted under any applicable state or federal privileges, and any state confidentiality statutes, rules, or doctrine. Further, if a Party discloses information to the Mediator and that Party indicates it is not to be disclosed to the other side, the Mediator will not disclose the information so designated.

Dkt. No. 37, Ex. B. (emphasis added).

The plain meaning of this provision is equally clear. It can be summed up in the first sentence of the provision: "The entire mediation process is confidential." It bars the parties from telling anyone about the mediation: submitting to a court of law documents prepared for mediation, disclosing positions that were taken in mediation, advising a court or trier of fact about admissions that might have been made during the mediation process, or disclosing settlement proposals that were bandied between the parties during mediation. It does not bar either party from bringing a

11

lawsuit that relies on the facts of the underlying dispute. I venture to suggest that, if it did, neither party would have consented to mediate.

Lavalette would have the Court read the phrase "Confidential Material" to include any and all conduct or statements that disclose facts concerning the underlying dispute. Obviously the parties explained their disputes, and their respective position about those disputes, to the mediator, during what turned out to be a futile effort to resolve the disputes (all disputes) between the parties short of litigation. In effect, Lavalette asserts that the terms of the Mediation Agreement bar the ASPCA (but apparently not Lavalette) from bringing a lawsuit if the claims asserted in that lawsuit were discussed during the mediation – as they necessarily must have been.

Lavalette's interpretation of the term "Confidential Material" is plainly unreasonable. Although the Mediation Agreement defines "Confidential Material" broadly, the sentence that precedes it make it perfectly clear that the purpose of the provision is to protect the mediation process – not to bar either party from suing the other when mediation failed, or from filing court papers that properly plead claims with supporting facts, or from providing evidence about the underlying facts as the litigation process unfolds. *See Ajdler v. Province of Mendoza*, 890 F.3d 95, 100 (2d Cir. 2018). If the parties had intended that mediation preclude subsequent litigation they would have said so in unmistakable terms. A provision requiring that information relating to a concluded mediation remain confidential has never, as far as this Court is aware, been interpreted as a waiver of the right to litigate the underlying unresolved disputes.

Moreover, the terms of the Mediation Agreement plainly demonstrate that, while the parties desired to resolve their disputes through the informal mediation process, they understood there to be a possibility of future litigation. The Agreement expressly provides that it was to be a "voluntary, non-binding process," and that "any Party may terminate its participation for any

reason." Dkt. No. 37, Ex. B. Given the potential for subsequent litigation, no reasonable draftsman would intend to render confidential any and all information about the parties' dispute, as opposed to information about the mediation process. And no draftsman did so. Such a sweeping interpretation would not only work to the detriment of both the ASPCA and Lavalette, by precluding either party from bringing claims on the underlying dispute in the event the mediation process failed; it would also result in a confidentiality provision too broad and sweeping to be enforced as written. *See Harding v. Naseman*, 2009 WL 1953041, at *28 (S.D.N.Y. July 8, 2009), *aff'd*, 377 F. App'x 48 (2d Cir. 2010).

Lavalette undoubtedly disagrees with how the ASPCA characterizes his behavior in its Complaint. But that is why we are in litigation. The parties did not agree that their dispute about Lavalette's behavior during his employment would be kept eternally confidential, even if they were unable to resolve it. The ASPCA did not breach the Agreements by filing a complaint that was pleaded in a manner that survives *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) – a complaint that pleads facts plausibly giving rise to the breach of fiduciary duty claims it asserts. Nor will it breach the agreements by offering evidence in court about those claims, even if it disclosed the same information to the mediator. Doing so will not violate the confidentiality of the "mediation process."

Lavalette's breach of contract counterclaim based on the Agreement in Contemplation of Confidential Mediation and the Mediation Agreement is dismissed, with prejudice and without leave to replead.

## III.    Sanctions

Fed. R. Civ. P. 11(b) provides as follows:

> By presenting to the court a pleading, written motion, or other paper ... an attorney or unrepresented party certifies that to the best of the person's knowledge,

13

information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed R. Civ. P. 11(b).

Rule 11(b) imposes "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing[.]" *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991). "An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995) (quoting *Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994)). Accordingly, courts in this Circuit "have found sanctions appropriate in cases where a plaintiff files a claim that is clearly deficient and where he advances no plausible argument in favor of validity." *de la Fuente v. DCI Telecommunications, Inc.*, 259 F. Supp. 2d 250 (S.D.N.Y. 2003). The decision to award sanctions under Rule 11 rests firmly within the discretion of the court. *See Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004).

14

I find it hard to believe that a competent attorney could have formed an "objectively reasonable" belief that Lavalette's counterclaim for "breach" was well grounded in fact and warranted by existing law, or that there was any plausible argument in favor of the counterclaim's not being dismissed. It appears clear that Lavalette knew there was no realistic chance of success – if there had been, Lavalette either would not have brought, or would have discontinued, his lawsuit in New Jersey. And a modicum of due diligence would have revealed that Fed. R. Ev. 408 afforded no basis for any such counterclaim. In short, this whole "counterclaim" matter appears to me to be precisely the kind of "baseless filing" that Rule 11 aims to deter. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

Additionally, Lavalette's lawyers refiled his counterclaim after the ASPCA had filed its original motion to dismiss. That motion placed Lavalette and his attorneys on notice that they were treading on thin ice. But rather than eliminate it from the Amended Answer, they doubled down, thereby wasting the time of the court and of counsel for the ASPCA.

Counsel for Lavalette are hereby ordered to show cause why the filing of this frivolous counterclaim should not be sanctioned pursuant to Rule 11(b). They must file an affidavit under penalty of perjury explaining their reasoning by April 27, 2026. The affidavit should not exceed five (5) pages.

**CONCLUSION**

The motion to dismiss Lavalette's counterclaim is GRANTED. Lest Lavalette be tempted to bring a motion for entry of an interlocutory judgment pursuant to Fed. R. Civ. P. 54(b), rest assured that I will not grant it.

Counsel for Lavalette shall submit by April 27, 2026 an affidavit not to exceed five (5) pages showing cause why the Court should not impose sanctions.

15

The Clerk of Court is respectfully requested to remove the motion at Dkt. No. 40 from the Court's list of open motions.

This is a written opinion on a motion to dismiss.  It constitutes the decision and order of the Court.[2]

Dated: April 14, 2026

U.S.D.J.

BY ECF TO ALL COUNSEL

---

[2] Last November, when I declined to dismiss or stay this lawsuit in favor of the New Jersey lawsuit, I told the parties they had six months to be ready for trial. *See* Dkt. No. 31. That six month period will be up very soon. While I understand that the parties have a new Magistrate Judge, I am not inclined to extend the time to complete discovery, and I will have no compunction about precluding uncooperative parties from presenting at trial any evidence that they wrongfully withhold during discovery. The trial of this action will take place next fall; after I confer with the newly assigned Magistrate Judge, I will be sending out a trial schedule.