UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  05/04/26

THE AMERICAN SOCIETY FOR THE
PREVENTION OF CRUELTY TO
ANIMALS,

                Plaintiff,

      -against-

GORDON LAVALETTE,

             Defendant.

25-CV-5016 (CM) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Now before the Court is defendant Gordon Lavalette's letter-motion (Def. Mot.) (Dkt. 62) to quash two subpoenas *duces tecum* served by plaintiff, The American Society for the Prevention of Cruelty to Animals (the ASPCA), on two of Lavalette's prior employers, ION Media, Inc. (ION) and New York Racing Association (NYRA). For the reasons that follow, the motion will be granted in part and denied in part.

## Background

The ASPCA is a New York-based not-for-profit corporation that promotes animal welfare and rescue. Compl. (Dkt. 1) ¶ 10. Lavalette worked as the Senior Vice President and Chief Financial Officer of the ASPCA from March 2021 until his termination in May 2025. *Id*. ¶¶ 12, 16. As part of the ASPCA's senior leadership team, Lavalette was responsible for "leading the ASPCA's strategic financial function and efforts." *Id*. ¶ 17. He also attended and set the agendas for the organization's board meetings, held at least quarterly. *Id*. ¶ 31.

This dispute centers around the parties' starkly different accounts of Lavalette's departure from the ASPCA. According to plaintiff, Lavalette spent the last six months of his tenure "manufactur[ing] and fil[ing] bad-faith, vexatious, and harassing internal complaints for the improper purpose of securing an undeserved and exorbitant separation payment." Compl. ¶ 2; *see*

*also id*. ¶ 35 (Lavalette engaged in a "malicious campaign to inundate the ASPCA with bad-faith internal complaints designed to inflict harm on the ASPCA, stifle its operations, and attempt to have the ASPCA separate with him on terms that would financially enrich him."). Plaintiff alleges that Lavalette "lodged more than 70" such complaints "for the sole purpose of exerting leverage in connection with his anticipated departure from the ASPCA." *Id*. ¶¶ 2-4, 41.

Lavalette, by contrast, contends that he was a good-faith whistleblower who raised numerous complaints regarding what he suspected to be "mass donor fraud and violations of the laws and regulations and policies" concerning, among other things, the ASPCA's vendor contracts, donor agreements, and data privacy compliance. *See* Defendant's Amended Answer (Amend. Ans.) (Dkt. 37 at ECF pp. 1-22)) ¶¶ 4-6, 37-39, 41.

The parties' competing narratives have spawned two lawsuits. On May 15, 2025, three days after his termination, Lavalette filed a lawsuit against the ASPCA in the New Jersey Superior Court, Essex County, alleging violations of the New Jersey whistleblower statute and defamation. Compl. ¶ 7.[1] Less than a month later, on June 13, 2025, plaintiff commenced the instant case in this Court, invoking its diversity jurisdiction, alleging that Lavalette was a "faithless servant" and breached his fiduciary duties to the ASPCA. Compl. ¶¶ 45-54. On December 17, 2025, Lavalette filed a counterclaim against the ASPCA, alleging that it violated the confidentiality provisions of the parties' Agreement in Contemplation of Mediation and Mediation Agreement. Counterclaim (Dkt. 37 at ECF pp. 22-29) ¶¶ 1-22.

---

[1] As the ASPCA notes in its federal complaint, Lavalette filed "a similar purported whistleblower lawsuit against at least one prior employer." Compl. ¶ 8. *Lavalette v. ION Media Net., Inc*., No. 16-CV-7286 (S.D.N.Y.) (hereafter, *Lavalette v. ION*), was filed in February 2016 and settled in February 2020, after the court denied ION's summary judgment motion. (*See* Dkts. 1, 145, and 150 in *Lavalette v. ION*.)

On November 4, 2025, the Hon. Colleen McMahon, United States District Judge, denied Lavalette's motion to stay or dismiss this action in deference to the earlier-filed state court case. (Dkt. 31.) On December 1, 2025, Judge McMahon issued a civil case management plan directing the parties to complete fact discovery by May 4, 2026. (Dkt. 34.) That deadline has since been extended to July 3, 2026. (Dkt. 72.) On April 14, 2026, Judge McMahon dismissed Lavalette's counterclaim. (Dkt. 65.)

Discovery, which has been contentious, is now proceeding under my supervision. (*See* Dkt. 58.) The instant motion arises out of two separate subpoenas *duces tecum*, which the ASPCA served on Lavalette's prior employers ION and NYRA on April 2, 2026. *See* ION Subpoena (Dkt. 62-1 at ECF pp. 2-7); NYRA Subpoena (Dkt. 62-1 at ECF pp. 8-13) (collectively, the Subpoenas). Both Subpoenas seek the same five categories of documentary evidence:

1. All Documents that reflect, relate to, or concern any internal whistleblower complaint, report, and/or allegation made, raised, or submitted by Lavalette – whether formally or informally-during his employment with [ION or NYRA].

2. All Documents that reflect, relate to, or evidence any actual or alleged breach of fiduciary duty by Lavalette during his employment with [ION or NYRA].

3. All correspondence received from Lavalette, and from any attorney or other representative acting on Lavalette's behalf, that threaten litigation and/or assert legal claims arising out of or relating to his employment with [ION or NYRA].

4. All pleadings, complaints, charges, and other filings made or submitted by Lavalette against [ION or NYRA] in any court, with any administrative agency, and in any arbitration and/or arbitral forum.

5. All audio and video recordings made by Lavalette during his employment with [ION or NYRA].

ION Subpoena at ECF p. 7; NYRA Subpoena at ECF p. 13.

On April 13, 2026, Lavalette filed his motion to quash the Subpoenas, arguing that they are "harassing, vague, overbroad and seek irrelevant and inadmissible evidence," Def. Mot. at 1,

and that he has standing to challenge them because he has a "legitimate privacy interest" in his prior employment records. *Id.* at 3.

The ASPCA filed its opposition on April 16, 2026, arguing that each request is relevant to show that Lavalette has a pattern of "making baseless whistleblower complaints, threatening (and filing) claims of retaliation, making surreptitious audio recordings of his colleagues, and absconding with confidential and privileged documents," Pl. Opp. (Dkt. 66) at 1, and that Lavalette lacks standing to contest the Subpoenas on relevance or burden grounds. *Id*. at 3-4. Finally, on April 20, 2026, Lavalette filed a reply (Def. Reply) (Dkt. 68), in which he again challenges the relevance of the materials requested, *see id.* at 1-3, arguing that the documents sought "have nothing to do with the claims, nor defenses, in this case, and would needlessly increase his fees and expenses for discovery as well as trial work by creating a 'trial within a trial' over Lavalette's prior employment[.]" *Id*. at 4.

## Legal Standards

As relevant here, Rule 45(d)(3)(A) requires the court, "[o]n timely motion," to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). Motions to quash are "entrusted to the sound discretion of the district court." *In re Fitch Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (quoting *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)). When such a motion is made, "the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'" *Soudani v. Soudani*, 2024 WL 3236911, at *1 (S.D.N.Y. June 28, 2024) (cleaned up). "Relevance is assessed under the familiar standard set forth in Rule 26(b)(1)." *Oasis Med., Inc. v. I-Med Pharma USA Inc.*, 2023 WL 6301728, at *8 (S.D.N.Y. Sept. 1, 2023); *see also In re*

*Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011) ("Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1).").

"Once relevance has been established, the party moving to quash bears the burden of demonstrating that the subpoena is overbroad, duplicative, [] unduly burdensome," or otherwise impermissible. *Padilla v. Sacks & Sacks, LLP*, 2021 WL 4429785, at *1 (S.D.N.Y. Sept. 27, 2021); *see also Phoenix Bulk Carriers (BVI), Ltd. v. Triorient, LLC*, 2021 WL 621226, at *3 (S.D.N.Y. Feb. 17, 2021) ("The burden to demonstrate the relevance of the requested material lies with the party issuing the subpoena; the burden to show that the request is impermissible lies with the non-party opposing the subpoena."). Ultimately, "[t]he movant bears the burden of persuasion on a motion to quash." *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 57892, at *2 (S.D.N.Y. Jan. 4, 2013).

### **Standing**

Only Lavalette has made a motion to quash. The recipients of the Subpoenas – ION and NYRA – have not.[2] "As a general matter, only recipients of a subpoena have standing to seek a protective order quashing or modifying the subpoena." *City of Almaty, Kazakhstan v. Ablyazov*, 2020 WL 1130670, at *1 (S.D.N.Y. Mar. 9, 2020). "In particular, only recipients have standing to challenge subpoenas on grounds of relevance or undue burden." *Oasis Med.*, 2023 WL 6301728, at *8. But there are exceptions to this rule. "Although, ordinarily, a plaintiff would lack standing to move to quash a non-party subpoena, a party has standing to so move if the party can demonstrate a claim of privilege or other substantial privacy right with respect to the documents

---

[2] On April 20, 2026, the ASPCA filed a supplemental "update" letter advising the Court that NYRA "informed the ASPCA that it has documents responsive to the . . . subpoena and intends to produce those documents." Pl. Update Ltr. (Dkt. 69) at 1.

sought." *Padilla*, 2021 WL 4429785, at *1; *accord Allison v. Clos-ette Too, L.L.C.*, 2015 WL 136102, at *7 (S.D.N.Y. Jan. 9, 2015) (collecting cases).

Lavalette argues that he has standing to challenge the Subpoenas on both privacy and burden grounds. *See* Def. Mot. at 3 (arguing that he has standing "because [he] has a legitimate privacy interest in the information sought."); Def. Reply at 4 (arguing that he also has "standing to object on the basis of undue burden," because the discovery sought would increase his legal expenses during discovery and trial).

Defendant is correct that he has standing to object to the Subpoenas on privacy grounds. Courts in this Circuit "have repeatedly found that an individual possesses a privacy interest with respect to information contained in [his] employment records and therefore has standing to challenge subpoenas seeking such records." *Allison*, 2015 WL 136102, at *7 (collecting cases); *see also Johnson v. J. Walter Thompson U.S.A., LLC*, 2017 WL 3055098, at *6 (S.D.N.Y. July 18, 2017) ("An employee has a privacy interest in [his] employment records sufficient to give [him] standing to object to a subpoena for those records served on a non-party employer.") (collecting cases); *Lev v. S. Nassau Communities Hosp.*, 2011 WL 3652282, at *1 (E.D.N.Y. Aug. 18, 2011) (same).

However, plaintiff is correct that only ION and NYRA – the recipients of the Subpoenas – "have standing to assert that producing the requested documents is an undue burden." Pl. Opp. at 3. *See Major League Baseball Props., Inc. v. Corporacion de Television y Microonda Rafa, S.A.*, 2023 WL 446881, at *2 (S.D.N.Y. Jan. 26, 2023) ("Even where a party has standing to quash a subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden.") (citation omitted); *Sound Around, Inc. v. Friedman*, 2025 WL 33505, at *5 (S.D.N.Y. Jan. 3, 2025) ("A non-recipient has standing to challenge a subpoena only if it has a privilege, privacy or proprietary interest in the documents sought.") (internal quotations and

citation omitted); *Dapkus v. Arthur J. Gallagher Serv. Co., LLC*, 2021 WL 83479, at *6 (D. Conn. Jan. 11, 2021) (noting that "it is well established that a person lacks standing to assert burdensomeness objections to a subpoena served upon another person," but modifying the subpoena to address the movant's privacy objections). This is because, for Rule 45 purposes, "undue burden" refers to the burden imposed by the subpoena itself, not the indirect burdens that may flow from expanding the pool of potential evidence in the case. *See Malibu Media, LLC v. Doe*, 2018 WL 6011615, at *3 (S.D.N.Y. Nov. 16, 2018) ("The 'undue burden' language in Rule 45 refers to the burden on the party to which the subpoena is directed – that is, the burden of actually finding and producing the requested documents or information.")

Consequently, the task for this Court is to weigh "the relevance or probative value of the documents being sought against the privacy interests asserted." *Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 203 (S.D.N.Y. 2023) (cleaned up); *see also Refco Grp.,* 2014 WL 5420225, at *6 ("If the movants have standing, 'the next inquiry requires weighing the relevance or probative value of the documents being sought against the privacy interests . . . asserted.'") (quoting *Solow v. Conseco, Inc.,* 2008 WL 190340 at *4 (S.D.N.Y. Jan. 18, 2008)); *Saladino v. Tufano*, 2025 WL 2430568, at *1 (S.D.N.Y. Aug. 21, 2025) ("Even where private information is at stake, motions to quash are denied when that privacy interest is outweighed by the relevance of the requested documents."), *appeal dismissed*, 2025 WL 4354223 (2d Cir. Dec. 31, 2025).

## Analysis

Lavalette argues that none of the materials sought from his former employers are relevant to "whether he was a 'faithless servant' or 'breached his fiduciary duties' while employed at the ASPCA." Def. Reply at 1. He further contends that the documents sought would be inadmissible at trial under Fed. R. Evid. 404 and 406. Def. Mot. at 3. The ASPCA responds that the requested

materials are "highly relevant to this matter," because "when a lawsuit concerns an employee's complaints to an employer, the employer is entitled to discovery regarding similar complaints the employee made at a prior employer." Pl. Opp. at 2. Plaintiff adds that it is irrelevant whether the documents would be admissible at trial "because information need not be admissible to be discoverable." *Id*. at 4.

## Categories 1, 3, and 4

Insofar as the Subpoenas seek "whistleblower" complaints made by Lavalette when he worked at ION and the NYRA, and litigation (or threatened litigation) arising out of those complaints, the caselaw largely supports the ASPCA's position. Where – as here – an employer claims that an employee's complaints were made in bad faith, for strategic advantage, courts in this Circuit frequently permit discovery concerning "similar complaints" made to prior employers is relevant and discoverable. *Ghonda v. Time Warner Cable, Inc.*, 2017 WL 395111, at *4 (E.D.N.Y. Jan. 27, 2017) (collecting cases); *see also*, *e.g.*, *Padilla*, 2021 WL 4429785, at *3 (refusing to quash subpoena to prior employer insofar as it sought "internal complaints and external complaints and charges that cover similar allegations to those asserted in the case at bar"); *Rodriguez v. NNR Glob. Logistics USA Inc.*, 2016 WL 11673310, at *6 (E.D.N.Y. Mar. 31, 2016) (permitting employer to obtain "documents regarding internal or external complaints of national origin or sexual orientation discrimination made by Plaintiff against her prior employer," as well as "EEOC filings made by Plaintiff against her prior employer and any position statements submitted by the prior employer to the EEOC"); *Ireh v. Nassau Univ. Med. Ctr.*, 2008 WL 4283344, at *6 (E.D.N.Y. Sept. 17, 2008) (refusing to quash subpoenas to prior employers insofar as they sought "complaints of race or national origin discrimination" made by plaintiff to his former employer), *aff'd,* 371 F. App'x 180 (2d Cir. 2010).

8

As Judge Parker explained in *Padilla*, "[t]o the extent that any such complaints exist, they may speak to [the employee's] motive and/or credibility" in lodging similar complaints against his most recent employer. 2021 WL 4429785, at *3. I therefore conclude that the documents sought in categories 1, 3, and 4 of the Subpoenas are relevant to the claims and defenses in this action.[3] Moreover, it is undisputed that Lavalette did in fact make "whistleblower" complaints (followed by a "whistleblowing lawsuit," Def. Mot. at 4) against ION, and plaintiff reports that NYRA also possesses responsive documents and is prepared to produce them. Pl. Update Ltr. at 1. As in *Ghonda*, therefore, the Subpoenas (as narrowed to categories 1, 3, and 4) "seek[] relevant information which" the ASPCA has "a reasonable basis to expect exists." 2017 WL 395111, at *4.

Lavalette's privacy interests, by contrast, are not weighty with respect to categories 1, 3 and 4. As plaintiff points out, it has *not* requested Lavalette's "entire personnel file[]" from either of his prior employers. *See* Pl. Opp. at 1. Thus, for example, the Subpoenas do not seek sensitive information concerning his compensation, benefits, general job performance, or health. Indeed,

---

[3] Lavalette's contention that the documents sought from ION and NYRA would be inadmissible at trial is misplaced. In the case upon which he primarily relies, the court granted a *limine* motion, on the eve of an employment discrimination trial, precluding the defendant from introducing evidence of plaintiff's "poor work performance" at her prior position because it was "inadmissible propensity evidence." *Zubulake v. UBS Warburg LLC.*, 382 F. Supp. 2d 536, 539-40, 541 (S.D.N.Y. 2005). Here, however, the issue is discoverability, not admissibility, and it is black-letter law that "[i]Information within the scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); *see also, e.g.*, *Ireh*, 2008 WL 4283344, at *6 n.3 (authorizing discovery of discrimination complaints made to prior employers without expressing "any opinion as to the admissibility" of those complaints at trial). Moreover, while evidence of prior bad acts is generally inadmissible to show propensity, *see* Fed. R. Evid. 404(b)(1), the same evidence may be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, [or] plan." Fed. R. Evid. 404(b)(2); *see also, e.g.*, *Muktadir v. Bevacco Inc.*, 2015 WL 1182128, at *1 (E.D.N.Y. Mar. 13, 2015) (holding that evidence of a similar discrimination complaint, made to another employer, was properly admitted at trial to impeach the employee's credibility and suggest that both complaints were "products of his invention"), *aff'd*, *Muktadir v. Bevacco Inc.*, 631 F. App'x 1, 3 (2d Cir. 2015). Given that the ASPCA has not yet laid eyes on the documents sought from ION and NYRA – much less formulated its trial strategy – this Court cannot conclude, on the present record, that those documents will not be admissible at trial.

although Lavalette invokes his "privacy interest in the information sought," Def. Mot. at 3, and relies on his "privacy rights" for standing to object to the Subpoenas, Def. Reply at 4, he never identifies any personal prejudice that he will suffer from disclosure of the whistleblower complaints he made during his prior employment or his related legal claims and charges. I therefore conclude that, as to these categories, Lavalette has failed to carry his "burden of persuasion." *Universitas Educ.*, 2013 WL 57892, at \*2. However, Lavalette is correct that, since the ASPCA already has access to the "publicly filed pleadings, motions, and orders" in *Lavalette v. ION*, Def. Mot. at 2, it has no need to subpoena the same documents from ION.

**Categories 2 and 5**

The balance comes out differently insofar as the Subpoenas seek documents "that reflect, relate to, or evidence any actual or alleged breach of fiduciary duty by Lavalette" during his prior employment. First, this request is formulated so broadly that it is difficult to understand its limits. Second, plaintiff's *only* theory of relevance, as to category 2 of the Subpoenas, is its contention that the documents sought will show that Lavalette "engaged in the same faithless behavior at his prior employers as he did at the ASPCA." Pl. Opp. at 1. Since this action arises solely from Lavalette's alleged breaches while employed by the ASPCA, plaintiff has failed to demonstrate that the evidence sought in category 2 "is relevant and material to the allegations and claims at issue in [this] proceeding[]." *Soudani*, 2024 WL 3236911, at \*1.

Likewise, plaintiff has failed to show that the audio and video recordings that Lavalette made while working for ION and NYRA (if any) are relevant to this action. It is undisputed that Lavalette made audio recordings while working for the ASPCA.[4] Plaintiff has made no showing,

---

[4] Lavalette has produced 269 audio files in discovery, all made surreptitiously while he served as the ASPCA's CFO. *See* Dkt. 71 at 1. On April 21, 2026, the ASPCA moved to compel him to produce "at least 38 additional recordings," which he has withheld on the ground that they are protected by the common interest privilege. *Id.*

however, that Lavalette made similar recordings at his prior positions – or, for that matter, that any such recordings are in the possession, custody, or control of the prior employers. More importantly, while the *fact* that Lavalette made such recordings (if it is a fact) may be discoverable in this action, plaintiff does not explain why the *content* of the recordings made at ION or NYRA is relevant to the claims and defenses asserted here. I therefore conclude, once again, that plaintiff has failed to carry its burden of demonstrating the relevance of the evidence sought in category 5 of the Subpoenas.

## Conclusion

For the reasons set forth above, defendant's motion to quash the Subpoenas (Dkt. 62) is GRANTED with respect to categories 2 and 5. In all other respects the motion is DENIED, except that ION need not produce any otherwise-responsive documents that are publicly available on the docket of *Lavalette v. ION*.

Dated: New York, New York
       May 4, 2026

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**