USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: __________
DATE FILED: 07/02/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS,

Plaintiff,

-against-

GORDON LAVALETTE,

Defendant.

25-CV-5016 (CM) (BCM)

**ORDER REGARDING DISCOVERY CONFERENCE**

**BARBARA MOSES, United States Magistrate Judge.**

For the reasons discussed during today's discovery conference, the parties' recent discovery motions are resolved in part as follows.

**Plaintiff's June 18, 2026 Motion to Compel NYRA to Produce Documents (Dkt. 96)**

Non-party the New York Racing Association (NYRA), which is one of defendant Gordon Lavalette's former employers, has advised the Court that although it possesses eight documents that "may be" responsive to category 1 of the subpoena (Subpoena) served on it by plaintiff The American Society for the Prevention of Cruelty to Animals (ASPCA), it has withheld all such documents as privileged, and has supplied a privilege log to the parties and (now) the Court. The log identifies the withheld documents as email communications that either include NYRA in-house counsel as a participant or reveal confidential communications with NYRA in-house counsel. NYRA states that it does not possess any other documents that are responsive to categories 1, 3, or 4 of the Subpoena. The Court will review the eight documents identified on NYRA's privilege log *in camera* before ruling on ASPCA's motion to compel.

**Defendant's June 18, 2026 Motion (Dkt. 95)**

The Court construes defendant Lavalette's June 18, 2026 letter as a motion asking the Court to (a) compel the ASPCA to produce certain documents it has withheld as privileged, including the "talking points" that it provided to Lavalette for use with another ASPCA employee, James

Tadra; and (b) reconsider its earlier ruling, *see* 6/1/26 Tr. (Dkt. 91) at 35-36; 6/1/26 Order (Dkt. 90) ¶ 1, that Lavalette failed to meet his burden of showing that the common interest doctrine applied to certain audio recordings that he made of his conversations with Tadra, and consequently was required to produce those recordings.

I decline to reconsider my prior ruling regarding the Tadra recordings. Notwithstanding the ASPCA's admission that its counsel's "memory of Tadra's separation was not accurate in the moment," Dkt. 102 at 2 (that is, that counsel was mistaken when he told the Court, on June 1, 2026, that Tadra was not fired), plaintiff is correct that my ruling did not rest upon that point, but rather upon Lavalette's inability to show that the underlying information provided by Lavalette to Tadra (or vice versa) was protected by the attorney-client privilege in the first instance, which is a necessary predicate for the application of the common interest doctrine. *See City of Almaty, Kazakhstan v. Ablyazov*, 2019 WL 2865102, at *7 (S.D.N.Y. July 3, 2019) ("This doctrine does not establish separate grounds for privilege, but rather is an exception to the rule that voluntary disclosure of privileged material to a third party waives protection from disclosure."); *Sokol v. Wyeth, Inc.*, 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008) ("[T]he common interest doctrine permits the disclosure *of a privileged communication* without waiver of the privilege provided the party claiming an exception to waiver demonstrates that the parties communicating: (1) have a common legal, rather than commercial, interest; and (2) the disclosures are made in the course of formulating a common legal strategy.") (emphasis added).

I defer decision on the extent to which the ASPCA can withhold, on privilege grounds, its own communications with Lavalette. As the ASPCA correctly notes, this issue – and related privilege issues – are pending before the Court in the form of a prior motion (*see* Dkt. 81) which remains under submission. In light of recent discovery developments, however, I accept for filing Lavalette's "supplemental" letter-brief on these privilege issues (Dkt. 107), and will accept a single

responding letter-brief from the ASPCA. The parties are directed to reach agreement on the schedule for that responding letter-brief and advise the Court when to expect it. Thereafter, no further supplemental, sur-reply, or sur-sur-reply briefs will be accepted absent advance authorization from the Court.

**<u>Plaintiff's June 18, 2026 Motion to Reopen Defendant's Deposition (Dkt. 97)</u>**

Plaintiff's motion to reopen defendant Lavalette's deposition, and to compel Lavalette to answer certain questions to which his counsel objected and instructed him not to answer during his initial deposition on June 12, 2026, is GRANTED to the extent that Lavalette must appear for a further session of his deposition, at which he must answer the objected-to questions and testify concerning (a) his Confidential Settlement Agreement with his prior employer Ion Media Network (Ion), *see* Dkt. 100 at 2 (quoting Lavalette's supplemental response to ASPCA's Request for Production No. 61); (b) his Agreement with NYRA, *see id.*; (c) any comparable settlement or separation agreements with other prior employers; and (d) any "whistleblower" complaints made by Lavalette to his prior employers, as well as any litigation (or threatened litigation) arising out of those complaints. *See* 5/4/26 Order (Dkt. 83) at 8.[1]

First, the instructions not to answer were improper pursuant to Fed. R. Civ. P. 30(c)(2), which permits such instructions "only when necessary to preserve a privilege, to enforce a limitation ordered by the Court, or to present a motion under Rule 30(d)(3)." The challenged instructions were based on "confidentiality," not privilege. Nor could any privilege objection be raised with respect to Lavalette's agreements with his prior employers, which may contain confidentiality clauses but are not for that reason "privileged." *See Morgan Art Foundation Ltd. v. McKenzie*, 2020 WL 3578261, at *5 (S.D.N.Y. July 1, 2020) (collecting cases).

[1] However, the parties need not schedule or conduct that deposition until this Court has resolved certain privilege questions likely to arise at the resumed deposition, including those raised by NYRA and Lavalette (see above).

Likewise, none of the challenged instructions operated to "enforce a limitation ordered by the Court." Although I have not – to date – specifically ordered Lavalette to produce his agreements with his prior employers, neither have I ruled that those documents, or their contents, are protected from discovery in this case. To the contrary: when Lavalette's counsel raised the issue (on a "hypothetical" basis) on June 1, 2026, I declined to give him "an answer off the top of my head," but observed that "[t]he general rule, as you all know, is that confidentiality obligations to a third party do not trump relevance," although they "may call for extra measures to protect the confidentiality." 6/1/26 Tr. at 30-31. Moreover, I have twice held that documents reflecting Lavalette's whistleblower complaints and/or litigation threats to his prior employers were relevant and discoverable – both from Lavalette and from the prior employers themselves. *See id*. at 29 (Lavalette); 5/4/26 Order at 7-10 (former employers). Consequently, Lavalette's counsel could not have believed, when instructing his client not to answer questions about those subjects at deposition, that he was enforcing a limitation ordered by the Court.

Nor were counsel's instructions necessary to "present a motion under Rule 30(d)(3)," which is a motion to "terminate or limit [the deposition] on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses or oppresses the deponent or a party." Fed. R. Civ. P. 30(d)(3)(A). Defendant never made such a motion, and does not assert that he had grounds therefor. Instead, once plaintiff moved to reopen the deposition and compel Lavalette to answer the challenged questions, he cross-moved for a protective order "barring any further deposition of Defendant Lavalette and barring the Plaintiff from its attempt to obtain the settlement/separation agreements and any negotiations that led to them," Dkt. 100 at 1, thereby invoking Fed. R. Civ. P. 26(c).

Second, the objections were not well-taken, in that the requested information – namely, information about Lavalette's whistleblower complaints made to his prior employers, his

settlement or separation agreements with those prior employers, and any litigation or threatened litigation against those prior employers – is in fact relevant and discoverable in this action, for the reasons this Court has twice explained. *See* 5/4/26 Order at 7-10 (authorizing ASPCA to seek documents concerning Lavalette's whistleblower complaints and litigation threats from his former employers); 6/1/26 Tr. at 29 (compelling Lavalette to produce documents concerning whistleblower complaints against former employers). Although these rulings did not specifically require the disclosure of Lavalette's settlement and separation agreements with his former employers, the Court now finds, for the avoidance of doubt, that they too come within the scope of Fed. R. Civ. P. 26(b)(1) and thus – whether or not they are ultimately deemed admissible – are discoverable in this action. *See ABF Capital Mgmt. v. Askin Capital*, 2000 WL 191698, at *1 (S.D.N.Y. Feb. 10, 2000) (because settlement agreements are not privileged, "no heightened showing of relevance need be made" to justify their disclosure) (collecting cases); *Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 394 F. Supp. 3d 461, 464 (S.D.N.Y. 2019) (citing a "slew of cases" applying the ordinary discovery standards of Rule 26 to privately-negotiated settlement agreements).

I do not doubt that the settlement and separation agreements contain confidentiality provisions, and I am not insensible to Lavalette's confidentiality concerns. As explained in *Morgan Art*, however, the parties to a relevant agreement – even a settlement agreement – many not "shield it from discovery 'merely because it contains a confidentiality provision, or was filed under seal.'" 2020 WL 3578251, at *5 (quoting *ABF Capital Mgmt.*, 2000 WL 191698, at *2); *see also Rocky Aspen Mgmt.*, 394 F. Supp. 3d at 464 ("[C]onfidentiality provisions inserted by parties into private settlement agreements do not immunize those agreements from discovery."); *Conopco, Inc. v. Wein*, 2007 WL 1040676, at *5 (S.D.N.Y. Apr. 4, 2007) ("[T]he simple fact that the parties to the settlement agreement agreed to its confidentiality does not shield it from discovery.")

Consequently, Lavalette may designate his testimony concerning his agreements with his prior counsel as "confidential" pursuant to the parties' Stipulation and Protective Order (Dkt. 49.) "Whether and under what conditions the settlement materials may be filed on the public docket is a question for another day." *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2020 WL 4586800, at *4 (S.D.N.Y. Aug. 10, 2020) (ordering production of settlement materials in discovery, subject to parties' confidentiality agreement).

Once the privilege issues discussed above are resolved, Lavalette must make himself available for a continued deposition, on a date and at a time reasonably convenient to the witness and counsel, and at that deposition must respond to the questions that he was instructed not to answer on June 12, 2026, as well as other questions seeking relevant information concerning the same topics.

The Clerk of Court is respectfully requested to close the motion at Dkt. 97.

Dated: New York, New York
July 2, 2026

**SO ORDERED.**



**BARBARA MOSES**
**United States Magistrate Judge**