USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____________
DATE FILED: 07/06/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS,

Plaintiff,

-against-

GORDON LAVALETTE,

Defendant.

25-CV-5016 (CM) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

The Court has received and reviewed, *in camera*, the eight documents that nonparty The New York Racing Association (NYRA) has identified as potentially responsive to Categories 1, 3, and 4 of the subpoena (Subpoena) served on NYRA by plaintiff The American Society for the Prevention of Cruelty to Animals (ASPCA) on April 7, 2026, but has withheld pursuant to the attorney-client privilege. In addition, the Court has reviewed NYRA's privilege log, submitted on July 2, 2026, which provides the information required by Local Civ. R. 26.2 with respect to each withheld document.

The elements of the attorney-client privilege, under New York law,[1] are "the existence of an attorney-client relationship, a communication made within the context of that relationship for the purpose of obtaining legal advice, and the intended and actual confidentiality of that communication." *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 264 (S.D.N.Y. 1995) (citing *People v. Osorio*, 75 N.Y.2d 80, 82-84, 549 N.E.2d 1183, 1185 (1989)); *see also Shih v. Petal Card, Inc.*, 565 F. Supp. 3d 557, 565 (S.D.N.Y. 2021) (same); N.Y.C.P.L.R. § 4503(a)(1) (the attorney-client privilege protects "evidence of a confidential communication made

[1] "In diversity cases such as this, where state law governs the claims, the Court looks to state law for determining privilege." *Kleeberg v. Eber*, 2019 WL 2085412, at *6 (S.D.N.Y. May 13, 2019) (collecting cases).

between the attorney or his or her employee and the client in the course of professional employment"). Where a lawyer provides both legal and business advice, "the court must ascertain which hat the attorney was wearing during the allegedly privileged communication." *Kleeberg*, 2019 WL 2085412, at *6. Generally speaking, the communication must be "predominantly of a legal character" to qualify for the attorney-client privilege. *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 377-78, 581 N.E.2d 1055, 1060 (1991).

The eight withheld documents (seven email chains and one memo) are all dated from December 23, 2019 through January 7, 2020, and all include defendant Gordon Lavalette, who was then NYRA's Chief Operating Officer and Chief Financial Officer, as an author or sender. Seven of the withheld documents include communications that were sent by or to NYRA's Chief Administrative Officer and General Counsel, Joseph Lambert, and/or NYRA's outside tax counsel, Louis Tuchman and Benjamin Okan of Herrick, Feinstein LLP. The one document that was neither sent nor received by a NYRA lawyer (discussed in more detail below) is a memorandum from Lavalette to three NYRA board members in which he discusses, among other things, communications he had with Lambert.

After carefully reviewing the withheld documents, I conclude that all of them were accurately described on the NYRA privilege log, and properly withheld as attorney-client privileged, with the following exceptions:

Document No. 2 is a December 30, 2019 memo from Lavalette to NYRA board members Joe Spinelli, Michael Del Guidice and Stuart Subotnick, in which Lavalette discusses his frustrations with a tax and compliance issue that, in his view, was not being dealt with swiftly enough by Lambert and David O'Rourke, NYRA's Chief Executive Officer. Portions of the memo describe confidential communications between Lavalette and Lambert concerning that tax and

compliance issue. These portions are privileged and may be redacted. The remainder of the memo, however, is not privileged and must be produced.

Documents No. 3 and 4 are (overlapping) email chains, beginning on December 30, 2019, concerning the same tax and compliance issue discussed in Lavalette's memo of the same date. The three earliest-in-time emails in each chain (including the 1:47 p.m. email from Spinelli) are not privileged and must be produced, except for the portion of Lavalette's 1:41:03 p.m. email discussing his confidential communications with Lambert. The later-in-time emails on each chain, which looped Lambert in as a "cc," were properly withheld as privileged.

Document No. 7 is an email chain between Lavalette and Lambert dated January 6, 2020. Although it (briefly) alludes to a prior communication concerning substantive issues, the January 6 emails are entirely logistical and must be produced.

Due to the sensitive nature of the tax and compliance issue discussed in Documents 2, 3, and 4, NYRA may designate them "confidential," as that term is used in the parties' Stipulation and Protective Order (Dkt. 49), and the parties must honor that designation.

NYRA states that it does not possess any other documents that are responsive to Categories 1, 3, or 4 of the Subpoena. Consequently, ASPCA's motion to compel NYRA to produce documents in response to the Subpoena (Dkt. 96) is GRANTED to the limited extent that NYRA must produce Documents No. 2, 3, and 4 (in redacted form), as well as Document No. 7, and may designate them "confidential." Plaintiff must serve this order on NYRA and file proof of such service.

The Clerk of Court is respectfully requested to close the motion at Dkt. 96.

Dated: New York, New York
July 6, 2026

**SO ORDERED.**

**BARBARA MOSES**
**United States Magistrate Judge**